UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LUKE NELSON SCHERRER, et al., )
)
        Plaintiffs, )
)
   vs. )    No. 4:07-CV-306 (CEJ)
)
CITY OF BELLA VILLA, et al., )
)
        Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for summary judgment. Plaintiffs oppose the motion and the issues have been fully briefed.

Plaintiffs Luke Scherrer ("Scherrer") and Angela Scherrer bring this action under 42 U.S.C. § 1983, claiming violations of their constitutional rights during their arrests. Plaintiffs also assert state law claims of assault and battery and malicious prosecution. Plaintiffs seek an unspecified amount of compensatory and punitive damages.

Defendants are the City of Bella Villa and Officer Nicholas Nazzoli. After dismissal of some of the plaintiffs' claims, and only the following remain and are at issue in this motion: (1) plaintiff Scherrer's § 1983 claim of excessive force against Officer Nazzoli (Count I); (2) plaintiffs' § 1983 municipal liability claims against the City of Bella Villa (Count II); (3) plaintiff Scherrer's assault and battery claim against Officer

Nazzoli (Count IV); and (4) plaintiff Angela Scherrer's malicious prosecution claim against Officer Nazzoli (Count V).[1]

**I. Background**

On the evening of February 24, 2005, Officer Nazzoli of the Bella Villa Police Department was stopped in his vehicle at the intersection of Avenue H and Bayless. He testified that he saw plaintiff Scherrer drive through a red light at the intersection and turn the corner at a high rate of speed. Scherrer denies that he ran the red light or that he was speeding. It is undisputed, however, that Scherrer rolled through a stop sign and, upon observing this, Officer Nazzoli activated his emergency lights and pursued Scherrer in order to initiate a traffic stop.

Scherrer pulled into the driveway of his home, located outside the Bella Villa city limits. Both he and his passenger Scott Adkins exited the vehicle. After getting out of the vehicle, Mr. Adkins began walking toward the plaintiffs' house. Officer Nazzoli testified that Scherrer also started walking toward the house.

Officer Nazzoli testified that he gave repeated orders to Scherrer to stop and get down on the ground. According to Officer Nazzoli, Scherrer initially kept walking toward the house but then

---

[1] Plaintiffs acknowledge that the claim in Count III is without legal merit, and therefore the Court will grant summary judgment in favor of defendants on this claim. Plaintiffs have also voluntarily withdrawn the following claims: (1) Luke Scherrer's improper seizure claim in Count I; and (2) Luke Scherrer's malicious prosecution claim in Count V. Summary judgment in defendants' favor will be granted on these abandoned claims as well.

turned and started walking toward the officer at a fast pace and in an "aggressive manner." Nazzoli Depo., pp. 20, 25. Officer Nazzoli grabbed Scherrer's right arm and attempted to handcuff him. He brought Scherrer to the ground but Scherrer resisted being handcuffed and was "combative." Nazzoli Depo., p. 25. At that point, Officer Nazzoli deployed his Taser and "drive stunned" Scherrer. Id.[2] Officer Nazzoli testified that plaintiff then jumped to his feet and struck him on the shoulder. Officer Nazzoli stepped away from plaintiff and loaded darts into his Taser gun. When doing so, Officer Nazzoli inadvertently stunned his fingers, knocking himself to the ground. After regaining his composure, Officer Nazzoli managed to get on top of Scherrer who was still on the ground.

Scherrer's account of the events differs materially from Officer Nazzoli's. Scherrer testified that, after exiting his car, he complied with Officer Nazzoli's order to get down on the ground. Scherrer testified that he was lying face-down on the ground when Officer Nazzoli immediately handcuffed him and deployed the Taser on Scherrer's back.

Shortly after additional officers arrived at the residence, plaintiff Angela Scherrer came outside with her six-year-old son. Mrs. Scherrer testified that she saw her husband on the ground, straddled by Officer Nazzoli who was stunning Scherrer in the back. When Mrs. Scherrer asked what was happening, Officer Nazzoli told

---

[2]Drive-stunning refers to holding the Taser gun directly on the subject while applying the jolt. No darts are used.

-3-

her to "back away" and then shook the Taser at her and asked, "Do you want some of this." Angela Scherrer depo., p 30. Mrs. Scherrer was then arrested by an unknown officer. Officer Nazzoli did not have any physical contact with Mrs. Scherrer throughout the incident.

Scherrer testified that he suffered pain as a result of being stunned by the Taser. He did not see a doctor for his injuries; his wife treated his wounds with ointment and gauze.

Scherrer was charged with the following offenses: (1) careless and reckless driving; (2) violation of stop sign; (3) no proper insurance; (4) driving while suspended; (5) driving while intoxicated; (6) failure to obey a police officer; (7) resisting arrest; (8) assault on a police officer; (9) open container; and (10) carrying a concealed weapon. He was convicted of some of the traffic charges; the other charges were dismissed by the municipal court. Mrs. Scherrer was charged with failure to comply with an officer, resisting arrest, and interference with an officer, all of which were dismissed by the municipal court after trial because the offenses were not committed within the Bella Villa city limits.

**II. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary

judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Citrate, 477 U.S. 317, 322 (1986).

**III. Discussion**

    **A)**    **Excessive Force Claim by Luke Scherrer**

In Count I of the complaint, Scherrer alleges that Officer Nazzoli used excessive force in effecting his arrest. Courts "analyze a claim that police employed excessive force during an arrest under the Fourth Amendment standard of 'objective reasonableness." Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir.

2006). "The reasonableness of a particular use of force depends on the circumstances of each case, including the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The Court's analysis must allow "for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97.

The Court finds that there is a genuine issue of material fact with respect to Scherrer's claim of excessive use of force. First, the severity of the crime which led to this incident---failure to stop at a stop sign---is relatively minor. Although Officer Nazzoli testified that he also observed plaintiff run a traffic light at an excessive speed, squeal his tires, and drive into oncoming traffic, that testimony has been contradicted by plaintiff and cannot be considered for purposes of this motion.[3]

---

[3]Defendants claim that plaintiffs simply cannot remember whether these traffic offenses occurred. However, both plaintiff and his passenger, Mr. Atkins, testified that they did not recall these offenses, even though they were both alert and attentive during the drive. The Court believes that plaintiffs have provided enough to dispute Officer Nazzoli's observations.

-6-

Second, whether Scherrer presented an imminent threat of danger to Officer Nazzoli cannot be determined, as the facts pertinent to this issues are in dispute. As discussed above, Officer Nazzoli testified that Scherrer walked toward him in an aggressive manner; Scherrer testified that he remained near his car and lay face-down on the ground as he was ordered to do.

Third, the disputed facts preclude a determination of whether Scherrer resisted arrest. According to Officer Nazzoli's account of the incident, Scherrer struck him and had to be physically subdued before he could be handcuffed. Scherrer, however, testified that he complied with the officer's order to lie on the ground and that he was handcuffed immediately upon doing so.

Fourth, the plaintiffs' have presented evidence that Scherrer was on the ground and handcuffed behind his back at the time Officer Nazzoli stunned him with the Taser. The Court cannot say, as a matter of law, that the repeated use of a Taser is an objectively reasonable amount of force where an individual suspected of a minor traffic offense is lying on his stomach in handcuffs, displaying no further signs of aggression.[4]

Defendants argue that Scherrer's excessive force claim fails because he sustained, at most, minimal injury as a result of Officer Nazolli's use of the Taser. "[A] *de mimimus* use of force

---

[4]Defendants contend that plaintiff was hostile and resistant while on the ground, and that he jumped up and punched Officer Nazzoli. However, for purposes of this motion, plaintiff has specifically disputed that he reacted angrily or that he assaulted Officer Nazzoli.

or injury is insufficient to support a finding of a constitutional violation." Crumley v. City of St. Paul, 324 F.3d. 1003, 1007 (8th Cir. 2003). It cannot be determined whether the use of a Taser in drive-stun mode (as Office Nazzoli testified) or its use multiple times (as plaintiff's testified) constitutes a *de minimus* amount of force, as the present record contains insufficient evidence about the device. Additionally, it is undisputed that the use of the Taser left marks on Scherrer's back and that the stunning was very painful. The Court finds that Scherrer's injuries are sufficient to support an excessive force claim, especially when considered in light of the evidence that he did not resist arrest or otherwise provoke the use of force. See Bauer v. Norris, 712 F.2d 408 (8th Cir. 1983)(suggesting that the lack of provocation would make *any* use of force excessive).

Defendants also argue that Officer Nazzoli is protected by the doctrine of qualified immunity. "The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting our of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002). Courts "employ a two-step process when considering an officer's claim of qualified immunity." Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008). First, the Court determines "whether the officer's conduct violated a constitutional right." Id. If so, the analysis turns on "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his

conduct was unlawful in the situation he confronted." Vaughn v. Greene Co., 438 F.3d 845, 850 (8th Cir. 2006). "This second step is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006).

Whether or not qualified immunity applies is a question of law and is often resolved on summary judgment. However, "[t]his does not mean . . . that courts may always decide questions of qualified immunity on summary judgment." Arnott v. Mataya, 995 F.2d 121, 124 (8th Cir. 1993). "If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would not be justified in making an arrest, then a material dispute of fact exists." Id.

The evidence, when viewed in the light most favorable to plaintiffs, indicates that Officer Nazzoli's conduct violated Scherrer's constitutional right to be free from the use of excessive force. Therefore, the Court turns to the second step in the qualified immunity analysis and examines whether a reasonable official in Officer Nazzoli's position would understand that his conduct violated that right.

There is no Eighth Circuit decision specifically addressing the constitutionality of the use of a Taser under the circumstances presented here. "However, the lack of an Eighth Circuit case addressing these specific facts involving a taser does not mean that [the police officer making the arrest] did not violate clearly established law." Brown v. City of Golden Valley, 534 F.Supp.2d

-9-

984, 993 (D. Minn. 2008). In Brown, the plaintiff was a passenger in her husband's vehicle when police initiated a traffic stop. Id. at 987-88. During the stop, the plaintiff became afraid of the officers and called 911. Id. Under the plaintiff's version of the facts, she was stunned with a Taser, without warning, for failing to comply with the officer's demand that she hang up the phone. Id. at 995. The court found that the officer's actions violated the plaintiff's right to be free from excessive force and denied the officer's claim of qualified immunity. The court noted that, at the time of the incident, "it was clearly established that it was unreasonable to, without warning, taser a nonviolent passenger who was not fleeing or resisting arrest and was suspected of a minor, nonviolent crime". Id.

Here, as in Brown, Scherrer alleges that he was a nonviolent suspect who was stunned with a Taser without warning. Scherrer testified that he was restrained in handcuffs, face-down on the pavement when Officer Nazzoli stunned him. The Court agrees that, even without specific case law on point, a reasonable officer should have known that the act of using a Taser under the circumstances described by plaintiffs would constitute use of excessive force. The Court concludes that Officer Nazzoli is not entitled to qualified immunity.

### B) Municipal Liability Claims

Count II of the complaint, directed toward the City of Bella Villa, contains two alternative theories of municipal liability under § 1983. First, plaintiffs claim that the City failed to

-10-

properly train, supervise and control its police officers. Second, plaintiffs claim that the actions of the officers are part of a pattern of transgressions of which the City knew or should have known.

To succeed on a § 1983 "failure to train" claim, plaintiffs must show that: (1) the City's police training was inadequate; (2) the failure to train reflects a deliberate and conscious choice by the City; and (3) the alleged deficiency in training procedures actually caused plaintiff's injury. See Teasley v. Forler, 548 F.Supp.2d 694, 706 (E.D. Mo., 2008). Plaintiffs must establish deliberate indifference on the part of the City, by proving that the City "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Noah v. Saint Louis Co., 2007 WL 2156301 at *4 (E.D. Mo., 2007)(quoting Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).

Plaintiffs have offered no evidence showing that the City of Bella Villa failed to train or supervise Officer Nazzoli. Scherrer admits that he has no knowledge of the training provided by the City to Officer Nazzoli. Officer Nazzoli testified that he was trained at the police academy on the proper use of force. There is no evidence to support plaintiffs' claim that the City's training or supervision was inadequate. Further, even if the Court accepts plaintiffs' conclusory allegation that the City's training and supervision procedures were inadequate, the record is devoid of any evidence suggesting that the City had notice that its procedures were inadequate and likely to result in a violation of

constitutional rights.  Plaintiffs have failed to present sufficient evidence to support their first theory of municipal liability.

Plaintiff's second theory of municipal liability states that Officer Nazzoli's actions were part of a pattern of transgressions by the City's police department.  To support this alternative theory of municipal liability, plaintiffs identify four additional cases in which the City of Bella Villa is being, or has been sued for constitutional violations relating to its police department.  However, each of these cases has been fully adjudicated in favor of the City of Bella Villa.[5]  A pattern of unsuccessful lawsuits against a party is not sufficient to establish a pattern of transgressions by that party.  Plaintiffs have again failed to provide any evidence to support their theory of municipal liability.  Summary judgment in favor of defendant on Count II of the complaint is appropriate.

**C)** **State Law Claims**

The remaining claims are Luke Scherrer's assault and battery claim and Angela Scherrer's malicious prosecution claim.  Both of these claims are made against Officer Nazzoli.

A law enforcement officer making an arrest is "answerable in damages as for assault and battery only when . . . he uses more

---

[5]The Court is aware of a fifth case, recently filed before this Court, which alleges that Officer Nazzoli improperly used a taser on a nonviolent motorist. Hendricks v. City of Bella Villa, 4:08-cv-1836 (CEJ).  However, the Court does not believe that unproven allegations in a pending case are sufficient to show a pattern of transgressions on the part of the City of Bella Villa.

force than is reasonably necessary." Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. App. E.D. 1987). The Court has already determined that a genuine issue of material fact exists as to whether the amount of force used by Officer Nazzoli was reasonable. However, even if it was unreasonable, consideration must be given to whether Officer Nazzoli is protected from liability under the doctrine of official immunity. Official immunity protects police officers "for negligent acts that are related to discretionary functions." Blue v. Harrah's North Kansas City, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005). "Deciding whether or not to arrest someone is a matter of discretion." Id. However, "official immunity does not apply to discretionary acts done in bad faith or with malice." Id.

Bad faith "embraces more than bad judgment or negligence." Id. Instead, it "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id.

As discussed above, plaintiffs and defendants present dramatically different accounts of the events that took place on February 24, 2005. Plaintiffs' version indicates that the use of the Taser was done needlessly and in reckless indifference to

Scherrer's right to be protected from excessive use of force. Because of the factual disputes that exist, it cannot be said that Officer Nazzoli is entitled to official immunity. Thus, the defendant is not entitled to summary judgment on Scherrer's assault and battery claim.

To state a claim for malicious prosecution, plaintiff Angela Scherrer must establish: (1) the commencement of a prosecution against her; (2) the instigation of that prosecution by defendant; (3) the termination of the prosecution in plaintiff's favor; (4) the lack of probable cause for the prosecution; (5) malice on the part of defendant; and (6) damage to plaintiff. See Thompson v. Wal-Mart Stores, Inc., 890 S.W.2d 780, 782 (Mo. App. W.D. 1995).

Officer Nazzoli did not participate in the physical act of arresting Mrs. Scherrer. However, he did sign an arrest notification, stating that Mrs. Scherrer was being arrested for "failure to comply with [a] lawful order of a police officer by refusing to go inside [her] house when instructed to do so." Mrs. Scherrer was also charged with "resisting arrest" and "interference with an officer, by interfering with handcuffing of suspect [Luke] Scherrer." In the arrest notification, Officer Nazzoli stated that the offenses occurred "at or near 800 Ave H . . . in Bella Villa, Missouri." However, the arrest notification reflects that Mrs. Scherrer lived at a different address.

"A plaintiff suing for malicious prosecution must prove legal malice, i.e., that the defendant initiated the prosecution for a purpose other than that of bringing an offender to justice."

-14-

Bramon v. U-Haul, Inc. 945 S.W.2d 676, 684 (Mo. App. E.D. 1997). Here, the question is whether Officer Nazzoli deliberately sought to initiate a prosecution of Mrs. Scherrer in a Bella Villa municipal court, despite knowing that the offenses she was charged with had been committed outside the city's jurisdiction. Certainly, if he did so, then a jury could find that he did so for a purpose other than to bring Mrs. Scherrer to justice. Officer Nazzoli is not entitled to summary judgment on Mrs. Scherrer's claim of malicious prosecution.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that motion of the defendants for summary judgment [#16] is **granted to Count II of the complaint**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment is **denied in all other respects.**

Judgment will be entered in favor of defendant City of Bella Villa on Count II following disposition of the remaining claims.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of February, 2009.