UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LUKE NELSON SCHERRER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:07-CV-306 (CEJ) |
| | ) | |
| CITY OF BELLA VILLA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to strike plaintiffs' expert witnesses. Plaintiffs oppose the motion and the issues have been fully briefed.

Plaintiffs bring this action under 42 U.S.C. § 1983, asserting claims of excessive use of force, assault and battery and malicious prosecution against defendant Nicholas Nazzoli, a police officer for the City of Bella Villa, Missouri.[1]

Plaintiffs offer Anthony Russo, a lieutenant with the St. Louis Metropolitan Police Department, as an expert in police practices.[2] Lt. Russo worked for twenty-nine years as a police officer, conducting hundreds of arrests and supervising over one hundred more. Lt. Russo has obtained certificates of training in police procedures. In formulating his opinions, Lt. Russo examined the complaint and police reports in this matter. Although the depositions had not

---

[1]The Court granted the defendants' motion for summary judgment on the excessive force claim against the City of Bella Villa.

[2]Plaintiffs also offered the expert testimony of Mark McCloskey, but have since withdrawn Mr. McCloskey as an expert witness. Thus, all portions of defendant's motion to strike pertaining to Mr. McCloskey are denied as moot.

yet been taken, Lt. Russo indicated that he would examine the depositions when they became available and supplement his report if his opinions changed.

"Decisions concerning the admission of expert testimony lie within the broad discretion" of the Court.  Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003).  Pursuant to Rule 702 of the Federal Rules of Evidence, a witness properly qualified as an expert may testify in regard to their "scientific, technical, or other specialized knowledge" so long as it serves to "assist the trier of fact to understand the evidence or determine a fact in issue."  Fed. R. Evid. 701.  "The trial judge is first charged with determining whether the witness is qualified to offer expert testimony."  Schmidt v. Magyari, ___ F.3d ___, 2009 WL 499320 at *3 (8th Cir., March 2, 2009).  Additionally, "district courts must act as gatekeepers to insure that proffered expert testimony is both relevant and reliable."  Anderson, 340 F.3d at 523, (citing  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)).

The Court notes that Lt. Russo has previously been found qualified to present expert testimony concerning proper protocol during an arrest.  See Cook v. City of Bella Villa, 4:06-cv-1531-SNL (E.D. Mo. 2007)(Doc. #41)(finding that Lt. Russo could provide expert testimony relating to his professional experience as a police officer).  The Court notes that Lt. Russo possesses significant specialized knowledge in police practices and procedures through his experience as a law enforcement officer and through his capacity as a training officer. The Court agrees that Lt. Russo is qualified to offer expert testimony on law enforcement practices and procedures.

However, such testimony is only admissible in so far as it is relevant and reliable.  See Daubert, 509 U.S. at 589.  Many courts have found that "the use of expert testimony is [helpful] in assisting the jury in evaluating claims of excessive force."  Parker v. Gerrish, 547 F.3d 1, 9 (1st Cir. 2008); see McCloughan v. City of Springfield, 208 F.R.D. 236, 239 (C.D. Ill. 2002); Wilson v. City of Des Moines, 160 F.Supp.2d 1038, 1042 (S.D. Iowa 2001); Eason v. Anoka-Hennepin East Metro Narcotics & Violent Crimes Task Force, 2002 WL 1739666 at *2-3 (D. Minn. 2002).  Thus, while Lt. Russo's testimony could be helpful to the jury in this case, it is necessary for the Court to examine the specific opinions for which Lt. Russo intends to testify in order to ensure that they are both relevant and reliable.

Lt. Russo's proffered statements are listed within twelve paragraphs in his expert report, each numbered by the parties.  Plaintiffs have withdrawn a number of the statements, leaving only the following for the Court to examine:[3]

Paragraph 2

If I accept as true the narrative portion of the police report describing the events before Mr. Scherrer stopped at his house, this was a routine traffic stop, and there was no reason for Officer Nazolli to feel threatened by Mr. Scherrer.

Paragraph 3

It is significant that the police report does not state that Officer Nazolli had a belief in advance that Mr. Scherrer was a known police character and/or known to be dangerous.

---

[3]The testimony contained in paragraphs one, eight, ten and twelve has been withdrawn, and the motion to strike is denied as moot as to these statements

## Paragraph 4

It is significant to the entire story that it started as a routine traffic stop, and not as a dangerous felony. The situation should not have escalated as it did. For example, Officer Nazolli's line "no more questions" set up an adversarial atmosphere instead of moving the situation towards compliance.

## Paragraph 5

If I accept as true the narrative portion of the police report describing the events which occurred when the two vehicles arrived at Mr. Scherrer's residence and Mr. Scherrer walked toward his house, it is my opinion that instead of ordering Mr. Scherrer to "get on the ground", the officer should have simply ordered him to stop. A police officer need only tell a suspect to get on the ground if the officer feels threatened by the suspect. <u>It is hard to imagine how Officer Nazzolli could have felt threatened</u>

## Paragraph 6

If I accept as true the narrative portion of the police report describing the beginning of the fight and the tasering, and so accept that Mr. Scherrer would not present his left hand for handcuffing while Officer Nazolli sat on him astride, then tasering was appropriate. If, on the other hand, the Officer tasered Mr. Scherrer before a demand for the left was made, as stated in the complaint, the tasering was inappropriate and unnecessary.

## Paragraph 7

If I accept that the first tasering was ineffective and that Mr. Scherrer jumped up and punched Officer Nazzoli even after being tasered, it is my opinion that the officer should have backed-up and thus disengaged. At that point it should have been obvious that the situation required more Officers. Officer Nazolli should have called for back-up and assumed a defensive posture. The danger of re-engaging, as described in the police report, is the precise danger which occurred - officer injury. Situations of this nature sometimes proceed to extremes, and end up involving deadly force. That is, of course, the worst outcome, and that is why the Officer should have assumed a defensive posture, reloaded his taser and then simply waited for back up. It was improper police procedure for him to have reengaged Mr. Scherrer.

## Paragraph 9

Let me now turn to the events involving Angela Degonia Scherrer, ("Ms. Scherrer"). When the officer showed her his taser and asked, "You want some of this" Officer Nazolli once more escalated the situation unnecessarily, and once more created an improper adversarial atmosphere. The proper thing for Officer

Nazolli to have said was "Ma'am, you need to step back.  I will speak to you in a moment."

Paragraph 11

It is my opinion that when the officers jeered at Ms. Scherrer for urinating in her pants they acted outside ethical police procedures.  Officers are trained to treat with proper respect even suspects under arrest.  A significant reason for this training is because it is important for the community to believe the police department is there to help the community and is not an occupying army.  The jeering was in violation of that training.

Upon examination of these paragraphs, the Court finds the statements  in paragraphs 3, 4, 6, 9 and 11 would be inadmissible at trial.   Lt. Russo's statements in paragraphs 3 and 4 that certain evidence is "significant" to the jury's decision on whether the amount of force was excessive conveys the impression that other evidence is not as significant to the jury's determination.  The decision of how much weight to assign to each piece of evidence is left solely for the jury.  See Powers v. Continental Cas. Co., 301 F.2d 386, 388 (8th Cir. 1962).  Further, Lt. Russo does not provide any basis for his opinion that this evidence is significant.  See United States v. Ellsworth, 738 F.2d 333, 336 (8th Cir. 1984)(expert's "conclusory statement" is properly excluded for lack of foundation).

In paragraph 6, Lt. Russo, without citing any basis for his opinion, asserts a legal conclusion as to whether or not the amount of force used by Officer Nazzoli was reasonable.  Even though Lt. Russo avoids the use of the word "excessive", by stating that the use of the Taser was unnecessary and inappropriate based on the circumstances of the case, Lt. Russo is in essence stating that the use of the Taser was excessive.  Similar expert testimony was

proscribed in <u>Peterson v. City of Plymouth</u>, 60 F.3d 469, 475 (8th Cir. 1995), and

most recently in <u>Schmidt v. Magyari</u>, 2009 WL 499320 at *4.  In <u>Schmidt</u>, the

Eighth Circuit held that Lt. Russo could not testify regarding the overall

reasonableness of police behavior in light of Fourth Amendment standards. <u>Id.</u>

Likewise, Lt. Russo cannot testify as to the overall reasonableness of Officer

Nazzoli's use of force.

The statements in paragraphs 9 and 11 pertain to plaintiff Angela Scherrer,

whose remaining claim in this case is that defendant Nazzoli improperly and

maliciously initiated prosecution against her in the Bella Villa municipal court.

Testimony that the statements and jeering of unnamed officers violated proper

police ethical training is irrelevant to Angela Scherrer's malicious prosecution

claim, and irrelevant to any of Luke Scherrer's claims.[4]  Further, a jury is likely

to understand that the alleged jeering of Angela Scherrer would be considered

disrespectful behavior on the part of the police officers.   Thus, expert testimony

on this point is not necessary.

The statement in paragraph 2, "and there was no reason for Officer Nazzoli

to feel threatened by Mr. Scherrer," constitutes speculation as to Officer Nazzoli'

state of mind.  Likewise, the statement in paragraph 5, "It is hard to imagine how

Officer Nazzoli could have felt threatened by someone walking away from him,"

constitutes no more than speculation.   Each of these statements would be

---

[4]Plaintiff contends that these opinions are relevant under the totality of the circumstances pursuant to <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985).  The Eighth Circuit recently rejected this argument in <u>Schmidt</u>.  <u>See</u> <u>Schmidt</u>, 2009 WL 499320 at *4.

inadmissible. The Court finds that the remaining portions paragraphs 2 and 5 contain admissible evidence based on Lt. Russo's professional experience as a law enforcement officer and may assist the trier of fact in determining whether Officer Nazzoli used excessive force against Luke Scherrer.

The Court finds the evidence contained in paragraph 7 may also assist the trier of fact and is admissible in its entirety. Expert testimony that Officer Nazzoli departed from routine police procedure to re-engage Luke Scherrer in a physical altercation could potentially be relevant to the determination of whether the amount of force used was reasonable, or whether Officer Nazzoli acted with malice, which would be relevant to his official immunity defense.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to strike plaintiffs' expert witnesses [#26] is **granted in part and denied in part** as set forth above.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 10th day of March, 2009.